UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDE EDWARD MORRIS,

       Petitioner,

v.

CINDI S. CURTIN,

       Respondent.

CASE NO. 2:10-10071
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; AND (2) A CERTIFICATE OF APPEALABILITY

Claude Edward Morris, ("petitioner"), confined at the Cotton Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Gerald M. Lorence, petitioner challenges his conviction for second-degree murder, M.C.L.A. 750.317; assault with intent to commit murder, M.C.L.A. 750.83; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

Petitioner was originally charged with first-degree premeditated murder, assault with intent to commit murder, and possession of a firearm in the commission of a felony. Following a bench trial in the Wayne County Circuit Court, petitioner was found guilty of the lesser included offense of second-degree murder and guilty as charged on the two remaining counts. This Court

1

recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of

Appeals' opinion affirming his conviction, which are presumed correct on habeas review

pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was seen walking in a residential area of Detroit several times one day.
> He spoke with the victims twice during this time and left the area. In the evening,
> defendant returned carrying a gun. He shot one victim, who was sitting in the
> driver's seat of his truck, twice in the head at close range, killing him. Defendant
> then shot the other victim, who was sitting on the back bumper of another truck,
> twice in the chest, and this victim survived. At trial, defendant asserted that he had
> never spoken to either of the victims. Defendant explained that he was walking
> home from a gas station when some men approached him and one man pushed him.
> Defendant claimed that the men attempted to rob him, and he shot them.

*People v. Morris*, No. 277148, * 1 (Mich.Ct.App. September 4, 2008)(On
reconsideration). [1]

Petitioner's conviction was affirmed on appeal. *Id.; lv. den.* 483 Mich. 854, 759 N.W.2d

10 (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The Defendant must be granted a new trial where his waiver of jury trial was
coerced and therefore not voluntary and independently given pursuant to U.S. Const.
Ams. VI, XIV; Const. 1963, Art. 1, Sec. 20.

II. The Defendant was denied his due process rights to a fair trial by the ineffective
assistance of counsel pursuant to U.S. Const. Ams. VI, XIV; Const. 1963, Art. 1, Sec.
20.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant

---

[1] The Michigan Court of Appeals originally issued their decision on July 3, 2008, but on petitioner's
motion for reconsideration, agreed to reissue their opinion on September 4, 2008.

to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockreil*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas

3

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington.* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and

4

comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*,

131 S. Ct. at 786-87.

## III. Discussion

### A. Claim # 1. The jury trial waiver claim.

Petitioner first alleges that his jury trial waiver was coerced because he was simply

handed a jury waiver form on the day of trial , was instructed to sign it, and was never informed

of the right to a jury trial that he was waiving.

On the first day of trial, the following exchange took place regarding petitioner's jury

trial waiver:

> THE COURT: Okay. Mr. O'Meara, your client wishes to have this case heard by
> the Court, and waive a jury?
>
> MR. O'MEARA: Yes, your Honor. I have had an opportunity to discuss Mr.
> Morris' right to trial by jury with Mr. Morris. He understands that he has an
> absolute right to have this case tried by a jury. He understands the effect of
> waiving that right would be that the Court, instead of 12 people from the
> community, would decide his guilt or innocence in this matter. He's executed the
> waiver form, and stands ready for the Court's voir dire.
>
> THE COURT: Okay.
>
> Mr. Morris, you have a right to have your case heard by a jury. I understand that
> you wish to waive a jury and have your case heard by the Court. Is that what you
> wish to do?
>
> DEFENDANT: Yes.
>
> THE COURT: All right. And that's your signature on the Waiver of Trial by
> Jury?
>
> DEFENDANT: Yes.
>
> THE COURT: Did anybody threaten you in any way, or make any promises to
> you in order to get you to give up your rights?

5

DEFENDANT: You mean right now?

THE COURT: Right.

DEFENDANT: No, no.

THE COURT: Okay.

DEFENDANT: Not right now.

THE COURT: This is what you wish to do?

DEFENDANT: Yes.

THE COURT: Any objection from the People?

MS. SAMUELS: No, your Honor.

THE COURT: The Court finds the waiver is knowingly and voluntarily made.

(Tr. 2/26/2007, pp. 3-4).

The Michigan Court of Appeals rejected petitioner's claim:

Before the trial in the instant case began, defense counsel indicated that he had an opportunity to speak with defendant and defendant understood that he had an absolute right to a jury trial. Defense counsel further asserted that defendant understood that the effect of waiving that right meant that the trial court, instead of a jury of 12 people from the community, would decide his guilt or innocence. Defense counsel stated that defendant had executed the waiver form. When questioned by the trial court, defendant indicated that he wished to waive his right to a jury trial and it was his signature that appeared on the waiver form. Defendant denied that he had been threatened or given promises to get him to surrender his rights. Because the trial court advised defendant of his right to a jury trial and ascertained that he understood that right and voluntarily relinquished it, the trial court complied with the court rule, and defendant has failed to overcome the presumption that his waiver was knowing, voluntary, and intelligent. The trial court did not commit clear error in accepting defendant's waiver of his right to a jury trial.

*Morris,* Slip. Op. at * 2 (internal citation omitted).

The burden of demonstrating that a waiver of a jury trial was invalid lies with the

6

defendant who waived it. *See Sowell v. Bradshaw,* 372 F.3d 821, 832 (6th Cir. 2004).

"[A]lthough recommended, there is no federal constitutional requirement that a court conduct an

on-the-record colloquy with the defendant prior to accepting the jury waiver." *Spytma v. Howes,*

313 F.3d 363, 370 (6th Cir. 2002); *See also Fitzgerald v. Withrow,* 292 F.3d 500, 504 (6th Cir.

2002)(neither an oral colloquy, nor any other particular form of waiver, is required for a valid

waiver of jury trial as a matter of federal constitutional law). Moreover, "[t]echnical knowledge

of the jury trial right is not required for waiver to be effective." *Spytma,* 313 F.3d at 370

(internal quotation omitted). Most importantly, "there is a knowing and intelligent waiver

where the defendant 'understood that the choice confronting him was, on the one hand, to be

judged by a group of people from the community, and on the other hand, to have his guilt or

innocence determined by a judge.'" *Sowell,* 372 F.3d at 836 (quoting *United States v. Sammons,*

918 F.2d 592, 597 (6th Cir. 1990)(internal quotation omitted)).

   In the present case, the judge advised petitioner that he had a right to have a jury decide

his case. The judge further ascertained that petitioner wished to relinquish this right and be tried

by the court sitting without a jury. The judge asked petitioner whether any threats or promises

had been made to induce him to waive his right to a jury trial. Petitioner indicated that he had

not been threatened into waiving his right to a jury trial. Under the circumstances, the trial court

judge's brief colloquy was constitutionally sufficient, particularly where petitioner's counsel

also indicated on the record that he had advised petitioner that he would be giving up his right to

be tried by twelve people from the community if he elected to proceed with a non-jury trial. In

addition, petitioner does not deny that he signed a written waiver of jury form. Courts must give

"presumptive force" to written waivers of a jury trial. *Spytma,* 313 F.3d at 371. Finally, the

7

record in petitioner's case "does not disclose any evidence that petitioner was so unaware of the rudimentary elements of trial by jury that his waiver cannot stand." *Id.* Petitioner is not entitled to relief on his first claim.

### B. Claim # 2. The ineffective assistance of trial counsel claims.

Petitioner next alleges that trial counsel was ineffective because: (a) petitioner was coerced by trial counsel into signing the waiver of jury trial form without being told what he was signing or given an explanation of what rights he was giving up; (b) petitioner's original counsel, who had relinquished her duty as lead counsel to trial counsel, her husband, still questioned witnesses on both direct and cross-examination; and (c) defense counsel failed to review petitioner's pre-sentence investigation report prior to sentencing.

As a preliminary matter, because of the nature of the ineffective assistance of counsel claims raised by petitioner, this Court recites verbatim the relevant underlying facts regarding petitioner's ineffective assistance of counsel claims from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Wagner,* 581 F. 3d at 413:

> Originally, defendant was scheduled to be tried before a jury, and his initial lead counsel began conducting jury selection. Co-counsel, who was more experienced with capital murder cases and jury trials, initially assisted by "sitting second chair". The trial court observed that lead counsel was not quite comfortable with voir dire and struggled with her questions to the veniremembers. The trial court learned that it was lead counsel's first capital murder trial and indicated that it was willing to adjourn the trial to afford her additional time to prepare. Because co-counsel had been absent for a portion of voir dire, he was not prepared to assume the role as lead counsel with the panel that had been selected at that point and requested an adjournment. Co-counsel became defendant's lead counsel, and defendant's original lead counsel agreed to continue representing defendant in a secondary capacity. Defendant indicated that he wanted her to continue to assist with his defense and he had no objection to co-counsel assuming the lead counsel role.

8

Several months later, defendant waived his right to a jury trial, and the trial court conducted a bench trial, during which defendant's former lead counsel questioned some of the witnesses.

*Morris,* Slip. Op. at * 3.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder,* 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington,* 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes,* 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court

9

believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

10

Petitioner initially contends that his new lead counsel coerced him into waiving his right to a jury trial and proceed with a bench trial, because counsel had "selfish" reasons for proceeding with a bench trial. Petitioner has provided no evidence in support of his claim. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F.3d 722, 733 (6th Cir. 2006)(bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998)(conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief). At the time of the jury waiver, petitioner explicitly denied that any threats or promises had been made to induce him to waive his right to a jury trial. Because there is no evidentiary basis for this claim, petitioner is not entitled to habeas relief.

To the extent that petitioner claims that counsel was ineffective for advising petitioner to proceed with a bench trial in lieu of a jury trial, he would not be entitled to habeas relief. A defense counsel's decision to waive a defendant's right to jury and proceed with a non-jury trial is a "classic example of strategic trial judgment" for which *Strickland* requires highly deferential judicial scrutiny, particularly on habeas review. *See Walendzinski v. Renico,* 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005)(citation omitted). A defense counsel's advice to a client to waive his jury "constitutes a conscious, tactical choice between two viable alternatives." *Id.* In the present case, petitioner's counsel could have reasonably believed that it was better strategy for petitioner to be tried by the judge rather than a jury, and petitioner has failed to offer any evidence to the contrary. *Id. See also Willis v. Smith,* 351 F.3d 741, 746 (6th Cir. 2003). By proceeding with a bench trial, petitioner was acquitted of the original first-degree murder

11

charge, which carries a mandatory nonparolable life sentence, *See* M.C.L.A. 750.316, and was instead found guilty of the lesser included offense of second-degree murder, as well as the assault with intent to commit murder charges, for which he received concurrent sentences of 15-30 years in prison. Counsel could very well have advised petitioner to waive a jury trial to avoid the possibility of being found guilty by a jury of the original first-degree murder charge, particularly in light of the evidence in this case that petitioner shot the murder victim twice in the head at close range.

Moreover, petitioner has failed to show that he was prejudiced by counsel's recommendation to proceed with a bench trial, because he has presented no evidence that the trial judge was biased against him in any way. *Willis,* 351 F.3d at 746. Finally, trial counsel's advice to petitioner to waive a jury trial and to proceed with a non-jury trial did not prejudice petitioner, where it was unlikely that a jury would have acquitted petitioner after hearing the same persuasive evidence that the trial court judge heard in this case, and may very well have found petitioner guilty of the original first-degree murder charge. *Walendzinski,* 354 F. Supp. 2d at 758.

Petitioner next contends that he was denied the effective assistance of counsel where his original counsel, who had given up her duty as lead counsel to petitioner's trial counsel, her husband, was nonetheless permitted to question witnesses at petitioner's trial on both direct and cross-examination. Petitioner alleges that another judge whom his case had originally been scheduled to go to trial before had indicated that his original lead counsel was unable to adequately represent petitioner.

As the Michigan Court of Appeals indicated in rejecting petitioner's claim, *See Morris,*

12

Slip. Op. at 3, the judge whom petitioner's case was originally in front of never suggested that

petitioner's original lead counsel was "over her head" and unable to represent petitioner.

Rather, the judge indicated that petitioner's original lead counsel, Ms. O'Meara, "didn't seem to

be quite comfortable with her voir dire yesterday," and the judge had asked her in chambers

whether it was her first murder trial.  When the judge was informed that this was Ms. O'Meara's

first murder trial, the judge commented that "just like all of us who have tried our first case, she

should be given the opportunity to prepare so that she can try her first murder case," and that if

Ms. O'Meara wanted an adjournment, the judge would adjourn the trial to allow her the

"opportunity to prepare to try her first premeditated murder case." (Tr. 11/30/06, pp. 5-7).

The judge did not suggest that Ms. O'Meara step down as lead counsel.  When Mr. O'Meara,

who acted as "of counsel" to Ms. O'Meara's office, informed the judge that he would be taking

over as lead counsel, this was not because of any suggestion by the judge.  Moreover, contrary

to petitioner's allegations that Mr. O'Meara took over as lead counsel without the full consent of

petitioner or his family, the record reveals that petitioner not only agreed to Mr. O'Meara

becoming lead counsel, but also stated he wanted Ms. O'Meara to continue to assist in his

defense. (*Id.,* pp. 9-11).

Although a state cannot force unwanted counsel upon a defendant against his will, *See*

*Faretta v. California*, 422 U.S. 806, 820 (1975), there is no evidence that petitioner objected to

Mr. O'Meara becoming lead counsel or to Ms. O'Meara remaining on the case as co-counsel.

What essentially happened was that petitioner agreed to permit a second attorney who was "of

counsel" to his original attorney to take over as lead counsel in his case while permitting his

original lead counsel to remain on the case.  Under such circumstances, petitioner was not

13

denied his Sixth Amendment right to the assistance of counsel. See *U.S. v. Castro,* 908 F.2d 85,

88-89 (6th Cir. 1990)(court properly denied defendant's motion to substitute counsel, despite

defendant's claim that he hired particular attorney to represent him at trial, but that the attorney

sent associate at his firm to try case; defendant never voiced objection or concern about

associate's representation before trial or during first three days of trial); *Cf. U.S. v. Namer,* 149

F. App'x. 385, 393-94 (6th Cir. 2005)(trial court did not abuse its discretion in denying

defendant's motion for substitution of counsel, where the court fashioned a reasonable

compromise by elevating second-chair counsel to lead position and retaining former lead

counsel as advisor).

Furthermore, petitioner has failed to show how any of Ms. O'Meara's questions at trial

were deficient or prejudicial.  Conclusory allegations by a habeas petitioner, without any

evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,*

455 F. 3d at 733.  Petitioner is not entitled to habeas relief on this claim.

Petitioner finally alleges that Ms. O'Meara was ineffective for failing to review the pre-

sentence report with petitioner prior to sentencing.  Any error by a defense counsel in failing to

read and review a pre-sentence investigation report with a defendant prior to sentencing does not

constitute ineffective assistance of counsel in the absence of any indication that the outcome of

the sentencing would have been different. *See Siebert v. Jackson*, 205 F. Supp. 2d 727, 734-35

(E.D. Mich. 2002).

Petitioner's claim fails for several reasons.  First, petitioner's counsel indicated at

sentencing that she had reviewed the pre-sentence report with petitioner prior to sentencing and

that the information contained within the report was accurate. (Tr. 3/13/2007, p. 3).  Counsel

14

indicated that she had filed a sentencing memorandum in which she requested a downward

departure from the sentencing guidelines range. Counsel allocuted extensively on petitioner's

behalf, pointing out that he had no prior criminal record, had lead an "exemplary life," had been

honorably discharged from the military, and had a family. Counsel also mentioned that it was

legal for petitioner to own the gun and that he shot the victim because he was in fear for his life.

(*Id.*, pp. 3-5). Petitioner expressed remorse to the judge and to the victim's family but did not

dispute counsel's assertion that she had reviewed the pre-sentence investigation report with

petitioner prior to sentencing. (*Id.*, pp. 5-6). After the prosecutor suggested that petitioner had

been under the influence of alcohol when the shooting took place, defense counsel objected,

stating that there was no evidence that petitioner was drunk on the day in question. (*Id.*, pp. 8-9).

      In the present case, petitioner has offered no evidence that his defense counsel failed to

review the pre-sentence report with him prior to sentencing. Moreover, assuming that counsel

did fail to review the pre-sentence report with petitioner prior to sentencing, petitioner has failed

to offer any argument how his sentencing would have been different had counsel reviewed his

pre-sentence report with him, therefore, he is not entitled to habeas relief on this claim.

      The Court will deny the petition for writ of habeas corpus. The Court will also deny a

certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make

a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To

demonstrate this denial, the applicant is required to show that reasonable jurists could debate

whether, or agree that, the petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*,

529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional

15

claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

## IV.  CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability.

**SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT COURT

DATED:   1-26-12

16